### JAMES B. ROBINSON *v.* COMMONWEALTH.

**Criminal Law—Homicide—Self-Defense.**

    One may lawfully do in the defense of the person of another all that he might lawfully do if the danger threatening or apparently threatening that other were threatening or apparently threatening himself.

**Instruction—Malice.**

    Malice, like any other fact, is to be found by the jury, and the court should not charge the jury in a murder case that they were bound to find that malice existed if they found certain other facts.

**Instruction.**

    It is error in a murder case for the court to charge the jury, in effect, that in order to reduce the offense from murder to manslaughter the accused must have committed the act under the influence of passion aroused by some act on the part of the deceased which was likely to excite violent and uncontrollable anger in the accused. It is not required to reduce murder to manslaughter that the killing should have been done under the influence of uncontrollable passion aroused by an act likely to create anger.

APPEAL FROM WOODFORD CIRCUIT COURT.

June 29, 1878.

OPINION BY JUDGE COFER:

In instruction marked "Y" the court used language which, although not so intended, was calculated to create the impression in the mind of the jury that the court was of the opinion it had been proved that the appellant inflicted on the deceased a wound or wounds which produced or contributed to his death. The words "if he did so," placed in parentheses, might fail to relieve the minds of the jury of the impression that the preceding language was clearly calculated to mark the fact that the appellant had inflicted one or more of the wounds on the body of the deceased. The court also assumed that the wounds inflicted caused the death of the deceased, and there is nothing in the after part of the instruction to correct or even tending to correct that error.

Instruction "Z" was also calculated to mislead the jury. In that instruction they were told that if the appellant was present, aiding and abetting another in shooting the deceased when such shooting was not necessary, and not reasonably believed by those who did the shooting to be necessary in their own defense from immediate and serious bodily injury, the act was unlawful. By this the jury were told, in effect, that if others did the killing and the appellant was present merely aiding and abetting them, and the killing was not necessary and was not reasonably believed by them to be necessary for their own defense, he was guilty although he might have believed and have had reasonable ground to believe the act in which he aided and abetted them was necessary for their defense.

This is not consistent with that broader and more liberal view of the law of self-defense now universally recognized in this country. One may lawfully do in the defense of the person of another all that he might lawfully do if the danger threatening or apparently threatening that other were threatening or apparently threatening himself. If I believe, and have reasonable grounds to believe, that "A" will kill "B" unless I shoot "A," I may lawfully shoot him, and may defend upon the ground of apparent necessity, and a fortiori, if I believe, and have reasonable ground to believe, that "A" is about to kill "B," and should under that belief aid "B" in killing "A," I may defend on the same ground, although it may turn out that "B" had no reasonable grounds to believe he was in danger.

If appellant did no more than to aid and abet others in killing the deceased, the question of his guilt depends, not on the question whether the persons who did the killing believed and had reasonable grounds to believe they were in danger, but whether the appellant

had such belief based upon reasonable grounds. If he only aided and abetted others he may be innocent, although they may be guilty.

Evidence that the appellant had been threatened by the negroes "around Clifton" should have been admitted, if, as we assume, the threats were of violence to his person. Such threats, having been communicated, have a natural bearing upon the question whether the appellant believed and had reasonable ground to believe he was at the time of the homicide about to lose his life or to suffer great bodily harm at the hands of the deceased. Of themselves these threats did not furnish sufficient grounds for such belief, but it was proper the jury should be allowed to consider them in connection with the other facts and circumstances in evidence in passing upon the question of self-defense.

As the judgment must be reversed for the errors indicated, it is proper we should notice that part of instruction "Z" relating to the law of murder. After telling the jury that if the killing was not in self-defense it was unlawful, the court proceeded to say that "if in addition to such want of necessity, such act on the part of the defendant, Robinson, was either prompted by previous hatred or ill-will, and even though it were done suddenly, yet if it was done without such provocation on the part of Noyman as was in its nature likely to excite violent passion in the defendant, Robinson, the act was malicious, and a killing so done is murder."

If the jury found the killing was not prompted by previous hatred or ill-will, they were then to inquire whether it was done without such provocation as was in its nature likely to excite violent passion in the defendant; and if they found there was no such provocation they were told the killing was murder. In other words, the court declared as matter of law that if the jury found certain facts to exist they were bound to find that malice also existed. Malice, like any other fact, is to be found by the jury, and the court should not have told them that they were bound to find its existence if they found certain other facts.

If they found the killing was not done in self-defense or under great provocation they were authorized to find it was done in malice; but whether they would so find was a question for them, and not for the court. The instruction seems to be based upon the assumption that every unlawful homicide not committed under the impulse of passion aroused by legal provocation is necessarily murder. Abstractly considered this may be correct, but the error lies in the fact that the court in the instruction undertook to deduce

the existence of malice from the fact that the killing was unlawful and without legal provocation, instead of leaving the jury to make that deduction, if under all the circumstances they thought they were warranted in so finding.

The court also erred in the same instruction in telling the jury, in effect, that in order to reduce the offense from murder to manslaughter the appellant must have committed the act under the influence of passion aroused by some act on the part of the deceased, which was likely to excite violent and uncontrollable anger in the appellant.

The effect of that part of the instruction is this : that although the killing may have been done under the influence of sudden and violent passion, yet such passion would not mitigate the crime, unless it were aroused by some act likely to create not only violent but uncontrollable passion. It has never been deemed necessary, in order to reduce a homicide from murder to manslaughter, that the killing should have been done under the influence of uncontrollable passion, or under the influence of passion aroused by an act likely to create uncontrollable anger.

A homicide committed under the influence of passion aroused by great provocation is sufficient to mitigate the crime, and whatever provocation is so great as to show that the homicide was induced by momentary passion, and not by malice, should be deemed sufficient.

Judgment *reversed* and cause remanded for a new trial on principles not inconsistent with this opinion.

*D. L. Thornton, for appellant.    Moss, for appellee.*